Thank you, Your Honor. May it please the Court, Foster Glass for Appellant. This is a case that I'm sure the Court's very much aware of, the briefs and so on. I think the issue, key issue, is whether summary judgment was appropriate on the issue of deliberate indifference. As you know, the Court found that based upon the case of the State v. Ford, however, our position is that for summary judgment, the Court must treat the facts of the petition and the allegations as true, at least give them that basis. And then the issue about deliberate indifference, I think that what we're looking here is, you know, I cited Redmond v. County of San Diego, and the other side says, oh, that case is no good. But Redmond v. San Diego also cites Whitley, which is a U.S. Supreme Court case. And they point out that, as the Court, I think, held in Redmond, that the conduct is so wanton or reckless with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. And the Court cited, that is, the Ninth Circuit cited Whitley for that. So the issue here is whether you have any kind of evidence of that nature, and you can't just disregard the behavior on the basis that you say that, well, the plaintiff has or the appellant has to prove objectively that there was deliberate indifference. Obviously, you can't get an admission as to whether it's deliberate. So you look at the factual circumstances. And in this case, if you look at the factual circumstances that we've alleged as true and that were not refuted, you have a whole list of circumstances that are quite a bit different than the estate of Ford case, which is quite distinguishable. Well, Mr. Glass, what's your strongest showing on deliberate indifference evidence? Well, I think the strongest showing is that you have several things. You have a prior case with an inmate that was in a cell, in the jail. They knew he was placed in a cell. They knew he was injured. They ignored him. And he had some injuries. And we cited, we mentioned that case that was pending. It's been settled since. So they had that knowledge. They had knowledge, as the record shows, that they were short, if not short staffed, certainly they were overcrowded, and that the memo said that there would be more assaultive behavior and they needed to take a closer look. They failed to follow their own classification procedures, which show that, again, because the inmate, Holland, was misclassified. He shouldn't have been celled with other inmates at all. So that was contrary to their own procedure and policy because he did not qualify. And not only did he not qualify, but they placed him in the cell with another person when, in fact, he had this history, which is quite a bit different than in the state of Ford in the sense that he had been violent toward, a long history of violence, and also total disregard and disrespect towards the jail staff. And seven days before the assault, he had a pen and a comb that was altered to be a threat to inmates. And the day before the assault, he had threatened an inmate. And in both of those two prior incidents, he made statements to the officers in very blunt terms to what they could do to themselves. So he was totally out of control. They knew that. And then you look at the policy of when the jail staff is aware that they have potential problems and overcrowding, they have some duty to check on inmates. And in this particular case, I think their real deliberate indifference is also shown by the fact that we have a call in from the victim stating, help me, I need medical assistance or help. Now, they deny that, but you have to accept the facts in the light most favorable to the plaintiff. And that was stated, and the response was, is all you guys need help. And then we have Holland, who says that he beat the guy for a second time after that, and that was when the plaintiff appellant was injured the most severely, according to Holland. And Holland had to call in after that and says, are you going to come and get this guy or do I have to keep beating him? There was blood all over the place. But at the time he was first put in the cell, until this event, was what, a day and a half? What was the lapse of time? Well, I don't know if it was a full day and a half. He was put in the night before, I think, or the afternoon before. But as I recall from the record, there was a considerable period of time during which there was absolutely no incident. Well, I don't know what considerable is, but, you know, I don't think one day or even two days would be considerable, but I don't think it was a full two days. All right. But you have an inmate who has those kinds of problems and he's misclassified. I mean, they have to know their own classifications, so they're willing to put this guy who's totally out of control, when you look at his record, having weapons even seven days before, attempting to apparently assault another inmate the day before, and they stick him in the cell and don't tell my client that he's going to be placed in with this guy. If you have any problems, you know, watch out or whatever. And so, I mean, I think that raises some facts that a trier of fact, a jury, could say, you know, this is deliberate indifference. I mean, not only are they placing this guy in there who's misclassified, and, you know, I guess the other side would like to say that, well, he was misclassified, but that was just a mistake, that's just negligence at most. Well, no, it's a course of conduct. They're very much aware of this guy's problems. I mean, they're dealing with him on a daily basis. It wasn't like a month before, but continuing seven days before the weapon, one day before, totally out of control, threatening another inmate. They're aware that he's a real danger, and they stick him in, misclassified. I mean, if you look at his history, it doesn't take too much of a giant brain trust to figure out this guy is totally out of control, and his history shows that he's likely to assault another person. So, I mean, it's almost expected, but they're indifferent towards the safety of another inmate sticking him in in that situation. Do you take the position that there's a liability, per se, putting anybody in that cell? Or do you put him in the cell and take your chances, and you're responsible for whatever the results may be? I think your last statements, I think, would be correct, that a reasonable person under those circumstances would know that it's very likely to happen. I mean, it's been happening all along, seven days before a major incident, the day before a major incident, and look what he says to the police officers. Total disregard, totally out of control. Yeah, I mean, how can you then say, you know, I think it's like the Whitley case that was cited by the Ninth Circuit in Redmond. The burden is on the individual officer who made the incarceration in that cell, right? Right. Is the government liable for it? I think they are, because, you know, the government, that is the agency in this case, they were aware of the problems with the staffing, with the overcrowding, because they put out a memo to that effect that had the case that we had cited that was still pending with DeHart, who had been in a cell, and the allegation there was that he had been left there after he was injured in a cell, and they placed him in there, and he passed out, and they didn't have a buzzer that worked, and they didn't bother to fix it, and he tried to push the buzzer, and it still wasn't fixed a year later, and they didn't go back to the cell. Counsel, you're down to about a minute. Do you want to reserve? Yeah, I will. Thank you. Very well. We'll hear from the county. Thank you. May it please the Court. Chris Bell on behalf of Deschutes County. And I wanted to respond to a few points made by counsel for plaintiffs. First and foremost, I think counsel for plaintiff really just stated the crux of this case in that counsel for defendant said that a reasonable person under the circumstances should have known the danger presented by Mr. Holland to his client, and that is simply not the standard in this circuit or anywhere else, as we know from the Supreme Court case of Farmer v. Brennan. It is a subjective standard. Not only do you have to prove that the circumstances that the plaintiff were in were objectively dangerous, that they provided a substantial risk of serious harm, but they also had to know that this specific cellmate presented a particular danger to Mr. Banks. And that's just not the case. In fact, Mr. Banks admitted at deposition, as pointed out in the brief, that there was no reason for fear, there was no reason to believe he was in any danger, that they were complete strangers, they didn't know each other, and it was approximately 24 hours of time before the incident occurred that nothing out of the ordinary happened. They just simply went about their business. There was no threat presented. So I think plaintiff is just proceeding from the incorrect standard. He alludes to Whitley and to the Redmond case. Both those cases were pre-Farmer cases, and we know that Farmer changed the game because Farmer came in and said across the board it is a subjective standard. Indifference cannot be proved by saying something should have happened or somebody should have known. They actually had to be aware of facts by which they can make an inference of substantial or serious risk. Well, now, Mr. Glass is arguing misclassification, that there was enough background here that even on a subjective basis it would be still liable. Well, and I understand that's the argument, but I think the argument fails in several respects. First and foremost, where is the evidence that Mr. Banks, or excuse me, Mr. Holland was misclassified? There's no evidence in the record to support that that I can see. Number two is this court's own holdings in a state of Ford and in, I hate to mispronounce it, it's Bych v. Hatton, 134 Fed Appendix 129. Actually, it's not that case. I apologize. Hammons, Hammons v. Martel, and in the Tenth Circuit case in Szymanski have all come down saying, a failure to abide by a policy with respect to classification does not prove subjective indifference. And I would pose to the court, just in particular to this case, how does the fact that Mr. Holland, Mayor, may not have been misclassified demonstrate at all that they were aware that he was a particular danger to this particular plaintiff? Because that, I believe, is the standard. Well, didn't he refer to an incident a few days before this event? Refer to an incident? I think plaintiff's counsel did refer to that where he threatened another inmate. But, you know, this is a jail. As several of the cases, I believe, from other circuits mentioned, jails are where we put bad and violent people. If we were to follow that line of reasoning, I think what you'd find is that we would have to build too many more jail cells for too many people because we couldn't put one bad person in with another for fear of somebody having a violent reaction to the other. I think in this case, it's clear. In fact, the record demonstrates that over a period of four years, I believe, starting in the year 2000, Mr. Holland was a frequent visitor to the Deschutes County Adult Jail. In those frequent visits over the course of four years prior to this case, he had definitely, there's no question, he had several disciplinary actions and he acted like kind of a punk. Was this the only double-up cell that was available for him? I'm not aware of that, Your Honor. I don't know, so I can't answer that question. But, again, I don't think. Cells at all? What's that again? Were there any empty cells? I think, well, that's not in the record. That's what I was wondering. Yeah, it's not in the record. I think there was in the record at summary judgment the night before that the jail was well within capacity. I can't give you the specific numbers, but it was well within capacity. And that's the other thing. There's this assertion of overcrowding and it's based upon a document that is pure hearsay. There's never been any foundation established for this document. We don't know who the document's from. Actually, we may know who the document's from. But the document itself never mentions overcrowding. It says there's been an increase in the jail population. And that document is dated five months previous to this incident. I believe it was dated in May of 2004. This incident occurred in November of 2001. Maybe it was June 2004. And it talked just about an increase in population. It didn't talk about any sort of understaffing or overcrowding. And so I think it's the appellant's burden to show that overcrowding, if that's the theory he's going with, was the proximate cause of his injuries. If there's no evidence to show that the jail was ever overcrowded, number one, which there isn't, and number two, that it was overcrowded on the specific night that he got into this altercation or the specific day he was actually selled with Mr. Holland, then the plaintiff cannot establish that case. There is no evidence of proximate cause. Anything further, counsel? No. Thank you. Mr. Glass, you have a little reserve time, about a minute. Thank you. Contrary to the position of counsel, I submit that when I say reasonably should have known, that's not exactly what I'm arguing. I'm arguing from Whitley where they say that they hold that the conduct that is so wanton or reckless with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. In other words, they're talking about subjective matters can be proven by inference, by the factual circumstances surrounding it, and that's what we're talking about here. They were aware subjectively, and you can't prove what's in their mind otherwise. Other than by factual inferences. Because there was a substantial set of facts that showed this particular inmate was a danger, and they knew that and they placed him there anyway, and that's deliberate indifference. They placed him there knowing his record, knowing what he had done within the last seven days and the day before, knowing that what my client thought or said really makes little difference. Why would he feel threatened by someone he didn't even know? He hadn't been assaulted in jail before. That's really not a factor that he didn't feel threatened. Why would you until something happens? Very well. Thank you very much, counsel. The case just argued will be submitted for decision.
judges: Beezer, O'scannlain, Paez